IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 11-0211-WS-N |
| | ) | |
| GARNER HOWARD CHESTANG, | ) | CIVIL ACTION 13-0233-WS-N |
| | ) | |
| Defendant/Petitioner. | ) | |

**ORDER**

This matter comes before the Court on defendant/petitioner Garner Howard Chestang's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (doc. 40). The Motion has been briefed and is now ripe for disposition.

**I.     Background Facts.**

On July 28, 2011, Garner Howard Chestang was indicted in this District Court and charged with one count of possession with intent to distribute approximately 28 grams of methamphetamine, in violation of 21 U.S.C. § 841(a)(1). The Indictment (doc. 13) charged that the quantity of methamphetamine exceeded 5 grams, such that Chestang was subject to the penalty provisions of 21 U.S.C. § 841(b)(1)(B), including a 10-year minimum sentence if he committed the violation after a prior conviction for a felony drug offense had become final. On September 8, 2011, the Government filed a Notice (doc. 21) asserting that Chestang had previously been convicted of a felony drug offense (Possession of Marijuana 1st) in state court in December 2001, that such prior felony conviction was final, and that Chestang was therefore subject to the 10-year mandatory minimum sentence specified in § 841(b)(1)(B) if convicted as to Count One.

Chestang, who was represented by appointed counsel, ultimately elected to plead guilty to Count One. On September 14, 2011, Chestang signed a Plea Agreement and Factual Resume (doc. 24). In those documents, Chestang acknowledged that he was subject to a minimum mandatory term of imprisonment of 10 years as to Count One. (Plea Agreement, at ¶ 11.) Chestang also admitted that he had sold one ounce of methamphetamine to a confidential informant on May 11, 2011, that lab testing had revealed the methamphetamine to have a net

weight of 26.54 grams and to be 44.8% pure, and that "the methamphetamine was comprised of 11.88 grams of pure methamphetamine." (Factual Resume, at 4-5.) Judge DuBose conducted a change of plea hearing on September 19, 2011, accepted Chestang's guilty plea, and found him guilty as charged. (Doc. 25, at 1.)

Prior to sentencing, the U.S. Probation Office prepared a Presentence Investigation Report (doc. 26). Applying the drug quantity table, the PSR noted that Chestang's base offense level would be set at 26 based on his admission that he was involved with the distribution of 11.88 grams of methamphetamine (actual). (Doc. 26, ¶ 27.)[1] After subtracting three levels for acceptance of responsibility, the PSR identified Chestang's adjusted offense level as 23. However, the PSR also explained that Chestang qualified as a career offender under U.S.S.G. § 4B1.1, which ratcheted his base offense level up to 37 and his total offense level (after acceptance of responsibility) up to 34. These career offender calculations (and not the offense levels drawn from the drug quantity table found at § 2D1.1(c)(7)) fixed the operative guidelines range for Chestang.[2] When combined with his criminal history category of VI (as dictated by U.S.S.G. § 4B1.1(b)), Chestang was facing a guideline range of 262 to 327 months. Neither Chestang (by and through counsel) nor the Government objected to the PSR's calculations. (*See* docs. 27 & 28.)[3]

---

[1] Pursuant to the drug quantity table found at U.S.S.G. § 2D1.1(c)(7), violations of 21 U.S.C. § 841 involving at least 5 grams but less than 20 grams of methamphetamine (actual) correspond to a base offense level of 26. Again, Chestang admitted involvement with 11.88 grams of pure methamphetamine.

[2] The career offender guideline provides that "if the offense level for a career offender from the table in this subsection is greater than the offense level, the offense level from the table in this subsection shall apply." U.S.S.G. § 4B1.1(b). As a career offender, then, Chestang was bound by the higher offense levels found in that subsection, rather than the lower levels in U.S.S.G. § 2D1.1(c) that generally apply to non-career offenders trafficking in this quantity of methamphetamine.

[3] The Position of Defendant with Respect to Sentencing Factors (doc. 28) filed by defense counsel reflected that "the Advisory Sentencing Guidelines for Defendant's sentence is correctly based on a Total Offense Level of 34 with a Criminal History Category of VI thereby resulting in a sentencing guideline range of 262 to 327 months imprisonment without consideration of any § 5K1.1 and/or Rule 35 relief which Defendant may receive should Defendant provide 'substantial assistance' to the Government." (Doc. 28, at 2.)

Fortunately for Chestang, the plea agreement that his lawyer negotiated left open the possibility of the Government exercising discretion to file a § 5K1.1 motion for downward departure at sentencing if Chestang provided cooperation resulting in substantial assistance in the investigation or prosecution of other criminal matters. During late 2011 and early 2012, Chestang indeed cooperated with the Government. Those activities benefited him greatly. On April 3, 2012, the Government filed a Motion for Reduction of Sentence (doc. 35) pursuant to U.S.S.G. § 5K1.1, recommending a downward departure of 50% from the low end of Chestang's guidelines range because of his substantial assistance in cooperating with the Government.[4]

At the sentencing hearing on April 4, 2012, the undersigned adopted the PSR without change, and calculated Chestang's total offense level at 34, his criminal history category at VI, and his sentencing guideline range at 262 to 327 months. (*See* doc. 39.) Notwithstanding these findings, the Court departed downward from the advisory guideline range based on the Government's § 5K1.1 motion, and imposed a 120-month sentence that represented the mandatory minimum sentence prescribed by 21 U.S.C. § 841(b)(1)(B). The net result was that Chestang received the lowest sentence available under the statute he had pleaded guilty to violating, a sentence that was 54% below the low end of his advisory guideline range.

Subsequently, Chestang executed a Notice of Non-Appeal (doc. 37) on April 4, 2012, in which he acknowledged that his attorney had advised him of his right to appeal the conviction and sentence, that counsel had explained the advantages and disadvantages of taking an appeal, that he had received sufficient time to consider his options and required no further explanation, and that "it is my desire to inform the Court that I do not wish to take an appeal." (Doc. 37, at 1.) Chestang's counsel signed the same document, certifying that he had indeed consulted with

---

[4] The Government's § 5K1.1 Motion specified that it was "**not** made pursuant to 18 U.S.C. Section 3553." (Doc. 35, at 1.) This is significant because § 3553(e) gives district courts authority to depart below a statutory minimum for substantial assistance only on motion of the Government. Because the Government's motion in this case was not made under § 3553(e), the statutory minimum remained in effect. *See, e.g., Melendez v. United States*, 518 U.S. 120, 125-26, 116 S.Ct. 2057 (1996) ("We believe that § 3553(e) requires a Government motion requesting or authorizing the district court to impose a sentence below a level established by statute as minimum sentence before the court may impose such a sentence.") (internal quotation marks omitted); *United States v. Head*, 178 F.3d 1205, 1206 n.1 (11th Cir. 1999) (without Government amending § 5K1.1 motion to include reference to § 3553(e), "the district court would not have had the authority to depart beneath the mandatory minimum sentence").

Chestang about the advantages and disadvantages of an appeal, and that he believed Chestang's decision not to appeal was knowing and voluntary. (*Id.*) As reflected in the Notice of Non-Appeal, Chestang did not pursue a direct appeal of his conviction or sentence.

On April 3, 2013, Chestang filed his § 2255 Motion, collaterally attacking his sentence on three grounds. First, Chestang asserts that he received ineffective assistance of counsel because his lawyer (i) failed to object to the base offense level, (ii) failed to request a lab report to verify the drug quantity, (iii) failed to challenge the 120-month sentence as "unreasonable," and (iv) failed to file a notice of appeal. Second, Chestang maintains that the PSR "erroneously calculated the amount of drugs" and argues that one ounce of methamphetamine should have yielded a guideline range of 84 to 105 months. (Doc. 40, at 5.) Third, Chestang seeks relief on the ground that "Defendant requested that counsel filed [*sic*] a notice of appeal," but "Counsel never responded." (*Id.* at 7.)

## II. Governing Legal Standard.

Collateral relief is an extraordinary remedy which "may not do service for a[ ] [direct] appeal." *United States v. Frady*, 456 U.S. 152, 165, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *see also Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) ("Courts have long and consistently affirmed that a collateral challenge, such as a § 2255 motion, may not be a surrogate for a direct appeal."). A defendant who has waived or exhausted his right to appeal is presumed to stand "fully and finally convicted." *Frady*, 456 U.S. at 164. The scope of collateral attack has remained extremely limited. "At least where there has been no intervening change in controlling law, a claim or issue that was decided against a defendant on direct appeal may not be the basis for relief in a § 2255 proceeding." *Rozier v. United States*, 701 F.3d 681, 684 (11th Cir. 2012) (citations omitted).

It is black-letter law that "section 2255 generally cannot be used to challenge an issue that the defendant could have raised on direct appeal but failed to." *Spencer v. United States*, 727 F.3d 1076, 1091 (11th Cir. 2013) (citations omitted). Thus, "[u]nder the procedural default rule, a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding." *McKay v. United States*, 657 F.3d 1190, 1196 (11th Cir. 2011) (citation omitted). A defendant's procedural default can be excused under one of two exceptions: "(1) for cause and prejudice, or (2) for a miscarriage of justice, or actual innocence." *Id.* "Under the cause and

-4-

prejudice exception, a § 2255 movant can avoid application of the procedural default bar by showing cause for not raising the claim of error on direct appeal *and* actual prejudice from the alleged error." *Id.* (citation and internal marks omitted).

"Constitutionally ineffective assistance of counsel can constitute cause" that excuses a procedural default. *Brown v. United States*, 720 F.3d 1316, 1333 (11th Cir. 2013) (citation omitted). "In order to do so, however, the claim of ineffective assistance must have merit." *Id.* (citation omitted). "To determine whether counsel's performance at trial fell below the level of effectiveness [guaranteed by] the Sixth Amendment usually requires courts to apply the familiar two-part test established in *Strickland v. Washington*." *Darden v. United States*, 708 F.3d 1225, 1228 (11th Cir. 2013). Thus, a § 2255 petitioner alleging ineffective assistance "must show that counsel's representation fell below an objective standard of reasonableness, and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Brown*, 720 F.3d at 1326.

"First, the defendant must show that his lawyer's performance was deficient," by overcoming "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," which is accomplished by demonstrating "that it was objectively unreasonable." *Darden*, 708 F.3d at 1228 (citation and internal quotation marks omitted). "The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Harrington v. Richter*, --- U.S. ----, 131 S.Ct. 770, 788, 178 L.Ed.2d 624 (2011) (citation and internal quotation marks omitted). "Second, the defendant must show that the lawyer's deficiency caused prejudice to his defense – *i.e.*, there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Darden*, 708 F.3d at 1228 (citation and internal quotation marks omitted). "The likelihood of a different result must be substantial, not just conceivable." *Harrington*, 131 S.Ct. at 792. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010).

**III. Analysis.**

   *A. Petitioner's Ineffective Assistance Claim.*

   As noted, Chestang's ineffective assistance claim consists of four components: (i) counsel was ineffective at sentencing in failing to object to the base offense level; (ii) counsel

was ineffective in failing to request a lab report to verify the drug quantity; (iii) counsel was ineffective in failing to object to the sentence as unreasonable; and (iv) counsel was ineffective in failing to file a notice of appeal. Each of these contentions will be examined in turn.

First, although Chestang faults his counsel for not objecting to the base offense level, he identifies no colorable basis for challenging the PSR on this point. Recall that Chestang's base offense level was set at 37 pursuant to U.S.S.G. § 4B1.1 because of his status as a career offender.[5] Petitioner does not articulate any possible argument his lawyer could have made to avoid being subject to § 4B1.1 or its associated base offense level of 37 for crimes with a statutory maximum of life. To the contrary, the PSR unambiguously shows that Chestang was over the age of 18 years at the time of the charged offense, that the charged crime was a controlled substance offense, and that Chestang had at least two prior felony convictions for crimes of violence or controlled substance offenses.[6] Further, under § 841(b)(1)(B), Chestang's applicable statutory maximum was life, which equates to a career offender base offense level of 37 under § 4B1.1. Petitioner does not specify any viable argument counsel might have made to exclude Chestang from the ambit of § 4B1.1 or otherwise lower his base offense level. He has thus failed to demonstrate either deficient performance or prejudice for purposes of a *Strickland* analysis.

Second, Chestang argues that his lawyer was ineffective for failing "to request a lab report to verify that amount of drug alleged in the instant offense." (Doc. 40, at 4.) But Chestang himself agreed to and signed a Factual Resume admitting that lab tests of the methamphetamine at issue in Count One revealed a net weight of 26.54 grams and 44.85% purity, equating to 11.88 grams of pure methamphetamine. (Factual Resume (doc. 24), at 4-5.)

---

[5] "A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a).

[6] As to prior convictions, the PSR shows (and petitioner does not dispute) that he had a felony conviction for possession of marijuana in 1976, a felony conviction for first-degree possession of marijuana in 2001, and a felony conviction for manslaughter in 2006. (Doc. 26, ¶¶ 42, 45, 46.) These convictions unquestionably place Chestang within the parameters of "career offender" status.

Given Chestang's admissions, it would have been pointless for his lawyer to request copies of lab reports (even in the unlikely event those documents had not previously been furnished to defense counsel via initial disclosures or discovery). What's more, Chestang has shown no prejudice attendant to any such oversight, given that (i) he offers no evidence or allegation that the drug quantity for which he should have been held responsible was actually less than 11.88 grams of pure methamphetamine, and (ii) he offers no evidence or allegation that the actual drug quantity was so low as to reduce his base offense level and/or remove him from the reach of the statutory minimum and maximum fixed by § 841(b)(1)(B).[7] Accordingly, petitioner has demonstrated neither deficient performance nor prejudice under *Strickland* with regard to drug quantity.

Third, Chestang insists that his lawyer rendered constitutionally ineffective assistance by not attacking his 120-month sentence as unreasonable. Such a contention is frivolous. Again, as a career offender, Chestang was facing a guideline range of 262 months to 327 months. Through effective advocacy and cooperation, Chestang's attorney coaxed a § 5K1.1 motion out of the Government and obtained a sentence of 120 months, which was both 54% below the low end of Chestang's guideline range and equal to the statutory minimum sentence. There was nothing

---

[7] At best, Chestang theorizes that "the actual amount of drugs seized was only 1 oz of meth. Which should not of [*sic*] trigger [*sic*] a 120 months 10 year term of imprisonment." (Doc. 40, at 5.) This argument reflects lack of understanding in how guideline ranges and statutory minimum sentences are calculated for methamphetamine offenses. Both the sentencing guidelines and § 841(b) distinguish between a mixture or substance containing methamphetamine, on the one hand, and pure methamphetamine, on the other. Chestang was held responsible for 26.54 grams of a mixture or substance containing methamphetamine, which translated to 11.88 grams of pure methamphetamine (given a purity level of 44.85%). The base offense level attributable to this offense (had § 2D1.1 governed) would have been the higher of the base offense level for 26.54 grams of a mixture and substance containing methamphetamine (level 20) or the base offense level for 11.88 grams of pure methamphetamine (level 26). Obviously, then, level 26 would have been the appropriate base offense level (as the PSR recommended), had Chestang not been subject to the career offender provisions of § 4B1.1. Petitioner's argument to the contrary is incorrect. It is also inconsequential, given that Chestang's base offense level was calculated under the career offender guideline, not the drug quantity table. As such, petitioner's belief that his guideline range was actually 84 to 105 months is deeply flawed. In fact, his guideline range was 262 to 327 months.

remotely "unreasonable" about the lenient sentence Chestang received, which was (again) the lowest sentence available as a matter of statute. *See generally United States v. Hoffman*, 710 F.3d 1228, 1233-34 (11th Cir. 2013) (district court's imposition of mandatory minimum sentence is not unreasonable, because "[t]he district court remains bound by statutory mandatory minimum sentences, even post-*Booker*"). For counsel to object to the sentence Chestang received as unreasonable would have been absurd under these circumstances; therefore, his failure to do so cannot rationally be viewed as constitutionally deficient performance.[8]

Fourth, Chestang maintains that counsel rendered ineffective assistance in failing to file a notice of appeal. The law is well-settled, of course, that "an attorney who fails to file an appeal on behalf of a client who specifically requests it acts in a professionally unreasonable manner per se" and that "[t]o satisfy the prejudice prong of the *Strickland* test, a defendant who shows that his attorney has ignored his wishes and failed to appeal his case need only demonstrate that, but for the attorney's deficient performance, he would have appealed." *Gomez-Diaz v. United States*, 433 F.3d 788, 792 (11th Cir. 2005) (citations omitted). Chestang cannot satisfy either *Strickland* prong on this claim. On April 4, 2012 (after being sentenced), he signed a Notice of Non-Appeal (doc. 37). In that document, Chestang confirmed that he had been advised of his right to appeal, had consulted with his attorney about his appeal options, had been given sufficient time to consider those options, and had determined that, "I do not wish to take an appeal." (*Id.*) This fact – and Chestang's failure to rebut it in his § 2255 filings – is fatal to his ineffective-assistance claim predicated on counsel's failure to file a notice of appeal on Chestang's behalf.[9] Stated differently, petitioner has shown neither that it was constitutionally

---

[8] "Counsel cannot be labeled ineffective for failing to raise issues which have no merit." *Cave v. Secretary for Dep't of Corrections*, 638 F.3d 739, 755 (11th Cir. 2011) (citation omitted); *see generally Shere v. Secretary, Florida Dep't of Corrections*, 537 F.3d 1304, 1311 (11th Cir. 2008) ("Shere's appellate counsel did not have a meritorious issue to raise on appeal, so his failure to address the issue did not constitute deficient performance."); *Ladd v. Jones*, 864 F2d 108, 110 (11th Cir. 1989) ("[S]ince these claims were meritless, it was clearly not ineffective for counsel not to pursue them.").

[9] *See, e.g., Weeks v. United States*, 2012 WL 3020361, *1 (11th Cir. July 24, 2012) ("a client cannot later claim that his attorney was deficient in failing to file an appeal when the client explicitly instructed his attorney not to file an appeal"); *United States v. Parker*, 720 F.3d 781, 786 n.3 (10th Cir. 2013) ("if the defendant expressly tells counsel *not* to file an appeal, counsel is not ineffective for following his client's instructions"); *Flores-Diaz v. United States*, (Continued)

deficient performance for his lawyer to honor defendant's specific, informed, written, post-consultation wishes not to pursue an appeal (as specified in the Notice of Non-Appeal), nor that he was prejudiced by his attorney's actions (*i.e.*, that Chestang actually would have appealed but for his lawyer's omissions).[10]

In short, the Court finds that Chestang's filings fail to make even a colorable showing of either deficient performance by his lawyer at sentencing, or prejudice resulting from same. The § 2255 Petition faults Chestang's lawyer for not articulating irrelevant, unhelpful objections that would have been completely meritless, and for not appealing after Chestang executed a Notice of Non-Appeal memorializing his informed, voluntary, considered decision not to appeal. Such allegations do not support a viable claim of ineffective assistance of counsel, particularly where Chestang's lawyer was successful in obtaining the statutory minimum sentence for his client, at a discount of more than half off the otherwise-applicable low end of the guidelines range.

### B. *Petitioner's Remaining Claims for Relief.*

The remaining grounds for relief set forth in Chestang's § 2255 Petition consist of a substantive claim that the PSR listed an incorrect drug quantity and base offense level (Ground

---

516 F. Supp.2d 818, 830 (S.D. Tex. 2007) (petitioner's lawyer "cannot be faulted for not filing a notice of appeal since [defendant] expressly conveyed he was not pursuing an appeal" and signed a Notice of Non-Appeal confirming that decision); *Tinsley v. United States*, 2012 WL 3206454, *3 (S.D. Ala. June 29, 2012) (where defendant executed Notice of Non-Appeal, and Notice "makes clear that he did not wish to appeal" after considering advantages and disadvantages of same, defendant "can show no *Strickland* prejudice due to counsel's (alleged) failure to ensure that he preserved his appellate rights"); *Perine v. United States*, 2012 WL 1580765, *5 (S.D. Ala. Apr. 5, 2012) (rejecting petitioner's *Gomez-Diaz* claim in § 2255 petition where petitioner's counsel had filed a Notice of Non-Appeal, petitioner "has neither acknowledged nor disavowed the Notice," and "this Motion was not filed until nearly eleven months after the Notice was filed").

[10]  Ordinarily, a petitioner who states that he instructed his counsel to file a notice of appeal receives "an evidentiary hearing to establish the content of the communications between Petitioner and his attorney." *Gomez-Diaz*, 433 F.3d at 792. Here, however, no hearing is necessary because "a district court is not required to hold an evidentiary hearing where the petitioner's allegations are affirmatively contradicted by the record, or the claims are patently frivolous." *Aron v. United States*, 291 F.3d 708, 715 (11th Cir. 2002). The Notice of Non-Appeal bearing Chestang's signature (and his failure to rebut or disavow such Notice) establishes that his allegation of wanting to file a notice of appeal is affirmatively contradicted by the record, and that his accompanying ineffective assistance claim is frivolous.

Two), and a substantive claim that Chestang did not get the direct appeal he wanted (Ground Three). These claims fail for the same reasons that their ineffective-assistance counterparts do, as specified above. In other words, Ground Two fails because the PSR listed the correct drug quantity (based on Chestang's own admissions in the Factual Resume), the base offense level under § 2D1.1 was properly computed, and even if it was not properly computed any such error was harmless because Chestang was correctly sentenced as a career offender under § 4B1.1, rendering the otherwise applicable base offense level under the drug quantity tables found at § 2D1.1 irrelevant. And Ground Three fails because Chestang's allegations are contradicted by his own representations in the Notice of Non-Appeal that he signed after sentencing, wherein he indicated that after full consultation with his attorney, he had decided not to pursue an appeal. More fundamentally, the Court would not reach the merits of Counts Two and Three because (framed as substantive counts rather than ineffective assistance claims) they are procedurally barred from review under § 2255, and Chestang has failed to establish the requisite cause and prejudice to excuse the default.[11]

## IV. Conclusion.

For all of the foregoing reasons, Garner Howard Chestang's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (doc. 40) is

---

[11] In his reply brief (doc. 43), Chestang shifts gears and raises a new set of arguments centering on his contention that the Government failed to give him credit for substantial assistance. He complains that he was "promise[d] a substantial assistance reduction … and the government has not comply [*sic*] with their end of the bargain." (Doc. 43, at 2.) He also requests an evidentiary hearing to enable him to testify about "all of the law-enforcement corruption that has occurred during the instant offense." (*Id.* at 3.) These claims appear time-barred on their face. They were raised in August 2013, more than 17 months after petitioner's conviction and sentence became final, such that they contravene AEDPA's one-year time limit. Furthermore, Chestang's complaints about not receiving a substantial-assistance reduction are frivolous. The Government in fact did file a § 5K1.1 Motion in connection with the sentencing hearing, as a result of which Chestang enjoys the benefits of a sentence that is 11 years and 10 months below the low-end guideline sentence he was otherwise in line to receive. Under these circumstances, petitioner's insistence that the Government has failed to provide him with a sentence reduction in exchange for his cooperation is counterfactual. Finally, Chestang does not relate his accusations of "law-enforcement corruption" to any legal claim that might be a cognizable basis for § 2255 relief. Again, petitioner pleaded guilty to Count One of the Indictment and was sentenced by this Court to a statutory-minimum sentence pursuant to the Government's § 5K1.1 motion. Allegations of "corruption" appear misplaced here, as they do not cast doubt on the validity or correctness of either Chestang's plea or his sentence.

**denied** in its entirety, without an evidentiary hearing.  A separate judgment will enter. Furthermore, because Chestang has failed to make a "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and because reasonable jurists could not debate whether these issues deserve encouragement to proceed further, the Court finds that he is not entitled to a Certificate of Appealability.  Finally, the Court **certifies** that any appeal from this ruling would not be taken in good faith, inasmuch as all claims presented in the § 2255 Petition are frivolous; therefore, Chestang will not be allowed to take an appeal *in forma pauperis*.[12]

DONE and ORDERED this 22nd day of January, 2014.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

[12] *See* 28 U.S.C. § 1915(a)(3) ("An appeal may not be taken *in forma pauperis* if the trial court certifies in writing that it is not taken in good faith."); *Napier v. Preslicka*, 314 F.3d 528, 531 (11th Cir. 2002) (action is frivolous for § 1915 purposes if it is without arguable merit either in law or in fact).